UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| FIREFIGHTERS PENSION AND RELIEF FUND OF THE CITY OF NEW ORLEANS | CIVIL ACTION |
| VERSUS | NO: 13-3935 c/w 13-6083, 13-6084, 13-6233 |
| | APPLIES TO 13-6083, 13-6084 |
| T. PAUL BULMAHN, ET AL. | SECTION: "J" (3) |

**Order & Reasons**

Before the Court are three motions: (a) William Kruse, David Callaham, and Brian Neiman (collectively, the Neiman Group)'s **Motion for Appointment as Lead Plaintiff and Lead Counsel (Rec. Doc. 103)**, (b) Thomas Mansfield (Mansfield)'s **Motion for Appointment as Lead Plaintiff and Lead Counsel (Rec. Doc. 101)**, and The Moshe Isaac Foundation ("Moshe")'s **Motion for Appointment as Lead Plaintiff and Lead Counsel (Rec. Doc. 95)**. Also before the Court are Movants Neiman, Kruse, and Moshe's Joint Memorandum in Opposition (Rec. Doc. 111) and Movant Mansfield's opposition (Rec. Doc. 113). The motions were set for hearing on November 20, 2013, with oral argument. Having considered the motions and memoranda of counsel, the record, and the applicable law, the Court finds that The Moshe Isaac Foundation, William Kruse, and Brian Neiman should be appointed as co-Lead Plaintiffs; that Federman & Sherwood and Wolf Popper should be appointed as Lead Counsel; and that Stephan

Kupperman of Barrasso Usdin Kupperman Freeman and Sarver should be appointed as Liaison Counsel.

**FACTS AND PROCEDURAL BACKGROUND**

This matter arises from four putative securities class actions brought by various plaintiffs against several executive officers of ATP Oil & Gas Corporation ("ATP"). All of the moving parties generally allege that ATP engages in acquiring, developing, and producing oil and natural gas properties primarily in the Gulf of Mexico and the North Sea, and that the U.S. Department of the Interior's drilling moratorium ("Moratorium"), put into effect following the Deepwater Horizon explosion and resultant oil leak, had a severe impact on ATP, causing them to file for Chapter 11 bankruptcy. During the bankruptcy proceedings, the parties allege that it became known that ATP: (1) severely downplayed the extent to which the Company’s business and revenues would be negatively impacted by the Moratorium; (2) violated certain provisions of credit agreements administrated by Credit Suisse AG; (3) issued a Registration Statement with false and/or misleading facts; and (4) made other false and misleading statements about its financial condition. As a result, plaintiffs allege that the price of ATP's stock fell $15.06 from the beginning of the class period to the time that ATP filed for bankruptcy.

In response to these allegations, Firefighters Pension and Relief Fund of the City of New Orleans ("Firefighters") filed the

first suit in this Court on May 24, 2013.[1] Subsequently, on August 5, 2013, Plaintiff/Movant Neiman filed a similar action in the Southern District of Texas, and Plaintiff Stackhouse filed another related case in the Southern District of Texas on August 20, 2013. The Texas court consolidated *Stackhouse* and *Neiman*, and the consolidated matter was transferred to this Court. Later, the Stackhouse/Neiman suits were consolidated with the *Firefighters* action.[2]

When the *Stackhouse*/*Neiman* matter was transferred to this Court, there were various motions pending. This Court denied all of the pending motions without prejudice and urged the parties to re-file any motion that was still relevant post-transfer. Moshe, the Neiman Group, and Mansfield all filed the instant motions to appoint Lead Plaintiff and Lead Counsel.

**LEGAL STANDARD & DISCUSSION**

**A. Is Appointment of a Lead Plaintiff Proper?**

The Court previously named Plumbers and Pipefitters National Pension Fund ("Plumbers") as lead plaintiff in the *Firefighters* matter, thus the Court must address whether appointment of another lead plaintiff(s) is necessary and/or appropriate. (Rec. Doc. 63) Movants argue that the creation of a subclass is warranted because:

[1] Plumbers and Pipefitters National Pension Fund was appointed Lead Plaintiff in the *Firefighters* suit on August 15, 2013. (Rec. Doc. 63)

[2] An additional suit was also filed by Thomas Mansfield (Case No. 13-6332), which is also consolidated with 13-3935.

(a) some members of the *Neiman* and *Stackhouse* actions bring claims under the Exchange Act, as opposed to the Securities Act, (b) Exchange Act claims are subject to heightened pleading standards that Plumbers will not be motivated to satisfy, (c) this action involves the purchase of common stock and not just ATP notes, and (d) the class period differs from the *Firefighters*'s class period. No party opposes the creation of a subclass.

In In re BP, PLC Sec. Litig., 758 F. Supp. 2d 428 (S.D. Tex. 2010), the court held that "[t]he stark difference between the two groups' class periods and their two distinct theories of the case create a significant risk of conflict and prejudice to class members if they are not separated." In re BP, PLC Sec. Litig, 758 F. Supp. 2d at 441; In re Enron Corp. Sec. Litig., 206 F.R.D. 427, 444 (S.D. Tex. Feb. 15, 2002) ("the Court is required to insure that independent classes with conflicts are protected by subdivision and separate representation"); see also In re Peregrine Systems, Inc., No. 02-870J, 2002 WL 32769239, *12 (S.D. Cal., Oct. 11, 2002) (creating one subclass for Securities Act plaintiffs and another for Exchange Act plaintiffs). Finding this to be the case here, the Court finds that it is appropriate to create a subclass for "all persons who purchased or otherwise acquired the common stock of ATP ... between the approximate dates of December 17, 2013, the effective date of ATP's registration statement, and August 17, 2012." Rec. Doc 101-1, pps. 7-8) (internal citation

omitted) Therefore, the Court will determine which movant(s) should serve as Lead Plaintiff for this subclass.

**B. Appointment of Lead Plaintiff**

**1. Standard for Appointing Lead Plaintiff**

Pursuant to 15 U.S.C. § 78u-4, this

> [C]ourt shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that-
>
> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). (West). This presumption

> may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff-
>
> (aa) will not fairly and adequately protect the interests of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).[3] These requirements are discussed more fully below.

[3] Additionally, all movants for must also submit certification swearing that they: (1) reviewed the complaint and authorized its filing, (2) did not purchase the securities at issue solely to participate in this action or at the direction of counsel, (3) are willing to represent the class, and (4) will refuse any compensation beyond what recovery they are owed as a result of this suit. 15 U.S.C. § 78u-4(a)(2). The certification must also list: (1) all relevant transactions during the class period (2) any other action under this proceeding of which they have been a part of over the last three years. Id.

**a. Timely Motion**

Within twenty days of filing suit, the filing party must publish notice of the pending action. Within sixty days of that notice, all parties interested in serving as lead plaintiff must file a motion for appointment with the Court. The Neiman Group, Mansfield, and Moshe had previously filed timely motions in the Southern District of Texas, but this Court dismissed the motions and instructed the parties to re-file their motions; therefore, though the 60-day window had elapsed when the motions were filed in *this Court*, the Court will consider their motions to be timely.

One of the proposed groupings, which consists of Moshe, Kruse, and Neiman, was not proposed as Lead Plaintiff until after all Movants had filed their motions and the window for such motions had passed.[4] Moshe, Kruse, and Neiman assert that, because the Neiman Group and Moshe filed timely motions individually, this new grouping's request for appointment should be considered timely; however, Mansfield contends that such a grouping should not be allowed as it is evidence of lawyer-driven manipulation of Lead Plaintiffs. (Rec. Doc. 11, p. 6) The Court need not determine if this proposal was timely, because, even if it was untimely, the "Court is empowered to consider the [untimely] proposal [...]

[4] Instead of filing a standard opposition to the motions to appoint lead plaintiff and counsel, Neiman, Kruse, and Moshe filed a "Joint Memorandum of Law" that purports to oppose Mansfield's motion, but actually proposes this new grouping.

through a sua sponte modification." Weltz v. Lee, 199 F.R.D. 129, 133 (S.D.N.Y. 2001). Therefore, the Court will consider this grouping without respect to its timeliness.

**b. Largest Financial Interest & FRCP 23 Requirements**

The party with the largest financial interest is the presumptive lead plaintiff. In determining who has the largest financial interest, some courts have found the following factors to be relevant: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended by the plaintiffs during the class period; and, (4) the approximate losses suffered during the class period. In re Orthodontic Centers of Am., Inc. Sec. Litig., No. 01-949, 2001 WL 1636846 (E.D. La. Dec. 18, 2001).

In addition to showing the largest financial interest, a lead plaintiff must also satisfy the requirements of Federal Rule of Civil Procedure 23. Although this rule lists four requirements, courts have held that those seeking to be appointed as lead plaintiff need only make a preliminary showing of typicality and adequacy. Tarica v. McDermott Int'l, Inc., No. 99-3831, 2000 WL 377817 (E.D. La. Apr. 13, 2000). Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. PRO. 23(a). Adequacy is generally divided into two inquires that consider the adequacy of both the proposed lead plaintiff and the proposed counsel.

"[C]ounsel must be qualified, experienced, and able to prosecute the action vigorously, and the class representatives must not have interests antagonistic to the class member." Tarica, 2000 WL 377817 at * 4. Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class. FED. R. CIV. PRO. 23(a). "The Fifth Circuit has held that 'the test for typicality is not demanding. It focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent.'" Tarica, 2000 WL 377817 at * 4 (citing Mullen v. Treasure Chest Casino, LLC, 186 F.3d 620, 625 (5th Cir. 1999).

**2. Application of Standard to the Movants**

The Movants' losses are detailed in the chart below. The Court will analyze each Movant, beginning with the Movant with the largest losses, until a proper Lead Plaintiff is found.

| | **Approximate Losses** | |
|---|---|---|
| | **First in First Out Calculation** | **Last in Last Out Calculation** |
| **Kruse, Neiman, Moshe** | $4,830,862.00 | $6,149,341.00 |
| **Neiman Group** | $4,236,776.27 | $2,918,297.86 |
| **Moshe only** | $2,297,661.00 | $2,297,661.00 |
| **Kruse Only**[5] | $3,098,048.98 | $1,779,570.57 |
| **Mansfield** | $774,042.00 | $774,042.00 |

5 These figures represent the financial losses of both William and Deborah Kruse. Deborah Kruse assigned her claims to William.

**a. Neiman/Kruse/Moshe Group**

This grouping consists of three plaintiffs: Moshe, Kruse, and Neiman. They propose the law firms of Wolf Popper and Federman & Sherwood as Co-Lead Counsel and Barrasso Usdin as Liaison Counsel. Based on its review, the Court finds that the appointment of this group as Lead Plaintiffs is the best way to represent the class in this matter. Combined, the parties clearly have the highest losses; and, even individually, Kruse and Moshe assert the largest losses. Additionally, at oral argument, counsel for the group informed the Court that the parties are available for consultation and have spoken with each other on the phone and via e-mail. Trans., November 20, 2013 Hearing, p. 17, lines 4-17. The parties also appear to be motivated to aggressively pursue litigation. Trans., November 20, 2013 Hearing, p. 17, lines 18-25. Neiman is one of the plaintiffs who contacted counsel to file suit, and though his financial losses are not the greatest in value, ATP stock made up the majority of his investment portfolio, causing him great personal loss. Trans., November 20, 2013 Hearing, p. 15, lines 8-15. As for Kruse, the fact that he suffered large losses alone weighs in favor of his appointment. Finally, in regards to Moshe, it is run by Robert Konig, a lawyer in good standing who has an understanding of the litigation at issue, making it a desirable

Lead Plaintiff.[6] Trans., November 20, 2013 Hearing, p.16, lines 10-25; p. 17, lines 1-3. Therefore, the Court finds that this group satisfies the requirement concerning the adequacy of the Lead Plaintiff to represent the class. Adequacy of class counsel and the typicality requirement were not challenged, and the Court finds that these requirements are met. As such, Brian Neiman, William Kruse, and The Moshe Isaac Foundation are appointed as Lead Plaintiffs.

**b. Other Movants**

As the Court has determined that Neiman, Kruse, and Moshe should be appointed as Lead Plaintiffs, the Court need not address the remaining applications for Lead Plaintiff status.

Accordingly,

**IT IS ORDERED** that the Neiman Group's **Motion for Appointment as Lead Plaintiff and Approval of Lead and Liaison Counsel (Rec. Doc. 103)** and The Moshe Isaac Foundation's **Motion for Appointment**

---

[6] Mansfield argues that Moshe is not an adequate representative because one of its trustees, Michael Konig, has engaged in "repeated fraudulent activity" and the foundation suffers from "continued legal troubles." (Rec. Doc. 113, p. 7-8) The Court finds that this is not enough to rebut the presumption that Moshe is a proper Lead Plaintiff. The wrongdoing that Mansfield alleges does not involve Robert Konig, who actually runs the day-to-day operations of Moshe. Further, the litigation in which Moshe was "involved" was unrelated to the current issues and involved the personal misconduct of Michael Konig, not Robert Konig. See Attorney General v. M.C.K., Inc., 432 Mass. 546 (Oct. 13, 2000). In fact, Moshe was only named once in the opinion, in a footnote, and it was only mentioned in connection with Michael Konig's conduct. Id. at 555, n.20. As such, the Court will allow Moshe to serve as part of the Lead Plaintiff group. The Court's determination is without prejudice to revisit this issue in considering a motion for class certification. Tarica, 2000 WL 377817 at *5.

**as Lead Plaintiff and Lead Counsel (Rec. Doc. 95)** are **GRANTED** with the following modification: David Callaham, initially included in the Neiman Group, is **STRICKEN** from the group. As such, Brian Neiman, William Kruse, and The Moshe Isaac Foundation will serve as Co-Lead Plaintiffs for the subclass defined as "all persons who purchased or otherwise acquired the common stock of ATP ... between the approximate dates of December 17, 2013, the effective date of ATP's registration statement, and August 17, 2012."

**IT IS FURTHER ORDERED** that Federman & Sherwood and Wolf Popper be appointed Co-Lead Counsel and that Stephan Kupperman of Barrasso Usdin Kupperman Freeman and Sarver be appointed as Liaison Counsel in the foregoing matter.

**IT IS FURTHER ORDERED** that (1) Lead Plaintiffs must file an Amended Class Action complaint within 45 (forty-five) days of the entry of this order, and (2) Defendants must file an answer to the Amended Class Action Complaint within 45 (forty-five) days of its filing.

**IT IS FURTHER ORDERED** that Mansfield's **Motion for Appointment (Rec. Doc. 101)** is **DENIED.**

New Orleans, Louisiana, this 6th day of December, 2013.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE